Case Nos. 25-3607, 25-5125, 25-5200

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA

*Plaintiff-Appellee/Cross-Appellant,*

v.

TREVOR JAMES KIRK

*Defendant-Appellant/Cross-Appellee.*

---

ERWIN CHEMERINSKY and J.H.,

*Amici Curiae in Support of the Judgment*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
Case No. 24-CR-00527-SVW
Hon. Stephen V. Wilson

---

# ANSWERING BRIEF
# OF AMICUS CURIAE ERWIN CHEMERINSKY

---

Erwin Chemerinsky
  *echemerinsky@law.berkeley.edu*
University of California, Berkeley
School of Law
Law Building 215
Berkeley, California 94720-7200
Telephone: (510) 642-6483

*Amicus Curiae*

**KENDALL BRILL & KELLY LLP**
Jeff Chemerinsky (27056)
  *jchemerinsky@kbkfirm.com*
Emma Tehrani (329603)
  *etehrani@kbkfirm.com*
10100 Santa Monica Boulevard
Suite 2500
Los Angeles, California 90067
Telephone:  (310) 556-2700

*Counsel for Amicus Curiae
Erwin Chemerinsky*

# **TABLE OF CONTENTS**

**Page**

I.    STATEMENT REGARDING ORAL ARGUMENT ......................................1

II.    STATEMENT OF JURISDICTION ..............................................................2

III.   ISSUES PRESENTED ..................................................................................2

IV.   STATEMENT OF THE CASE ......................................................................2

    A.    Factual Background..............................................................................3

    B.    Defendant Moved For A Judgment Of Acquittal, Which The
          Government Opposed And The Court Denied..................................10

    C.    The Government Moved To Dismiss The Felony Charge
          Against Defendant, And Both Sides Agreed To Seek A
          Noncustodial Sentence Of One Year's Probation.............................12

    D.    The Court Granted The Request To Lower The Offense To A
          Misdemeanor But Rejected The Stipulated Sentence, Ultimately
          Sentencing Defendant To A Below-Guidelines Sentence Of
          Four Months In Custody. ...................................................................14

    E.    Nearly Two Months After Sentencing, The Government Filed
          A Second Motion To Dismiss, Seeking To Dismiss The Entire
          Indictment.........................................................................................16

V.    SUMMARY OF ARGUMENT...................................................................17

VI.   STANDARD OF REVIEW........................................................................19

VII.  ARGUMENT.............................................................................................19

    A.    District Courts Have Discretion To Deny A Motion To Dismiss
          Under Rule 48(a) Of The Federal Rules Of Criminal Procedure. ......19

          1.    The text of Rule 48(a) clearly grants judicial discretion to
                decide whether to deny a motion to dismiss an
                indictment.................................................................................20

          2.    The history of Rule 48(a) confirms that courts have
                discretion to decide whether to permit dismissal of an
                indictment.................................................................................22

          3.    Caselaw confirms courts have discretion to deny a Rule
                48(a) motion when dismissal would be contrary to the
                public interest, even where a defendant consents to

i

dismissal. ................................................................................25

    (a)    The Supreme Court has held that courts have discretion to deny a Rule 48(a) motion. .........................25

    (b)    Following in the Supreme Court's path, the Ninth Circuit has taken no position on whether courts have discretion to deny a Rule 48(a) motion to dismiss where defendant consents. ...............................26

    (c)    Other circuit courts have held that district courts have discretion to deny a Rule 48(a) motion if the dismissal would be clearly contrary to the public interest. ............................................................................28

    4.    The public interest inquiry requires examination of the Government's reasons for seeking dismissal. ...........................31

    5.    The separation of powers doctrine supports judicial discretion to deny a Rule 48(a) motion that is contrary to the public interest. ...................................................................34

B.    The District Court Properly Exercised Its Discretion To Deny The Motion To Dismiss Here. ...........................................................36

    1.    Harassment is one factor the courts consider in exercising discretion under Rule 48(a), but not the only factor. ................38

    2.    The district court did not abuse its discretion in denying the motion where the court found that the motion was pretextual. ...............................................................................40

    3.    The Government's remaining arguments that the court abused its discretion here are unavailing. ................................44

C.    The Case Is Not Moot. .......................................................................50

VIII.  CONCLUSION ..............................................................................................52

STATEMENT OF RELATED CASES ................................................................53

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004)..............................................................................20

*Beech Aircraft Corp. v. Rainey*,
  488 U.S. 153 (1988)..............................................................................21

*Hirabayashi v. United States*,
  828 F.2d 591 (9th Cir. 1987) ...............................................................48

*Mi Familia Vota v. Fontes*,
  129 F.4th 691 (9th Cir. 2025) ..............................................................20

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ...............................................................44

*Mistretta v. United States*,
  488 U.S. 361 (1989)..............................................................................35

*In re Pangang Grp. Co., LTD.*,
  901 F.3d 1046 (9th Cir. 2018) .............................................................22

*In Re Richards*,
  213 F.3d 773 (3d Cir. 2000) .....................................................31, 33, 38

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) .............................................................40

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)................................................................................21

*United States v. Adams*,
  777 F. Supp. 3d 185 (S.D.N.Y. 2025) ....................................31, 32, 33

*United States v. Ammidown*,
  497 F.2d 615 (D.C. Cir. 1973)...................................................*passim*

*United States v. Blaize*,
  959 F.2d 850 (9th Cir. 1992) ...............................................................40

iii

*United States v. Burdeau*,
168 F.3d 352 (9th Cir. 1999) ...............................................................43, 44

*United States v. Cowan*,
524 F.2d 504 (5th Cir. 1975) .......................................................................26

*United States v. Dupris*,
664 F.2d 169 (8th Cir. 1981) ...................................................................51, 52

*United States v. Garcia-Valenzuela*,
232 F.3d 1003 (9th Cir. 2000) .................................................................19, 28

*United States v. Gonzalez*,
58 F.3d 459 (9th Cir. 1995). ....................................................................27, 35

*United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*,
228 F. Supp. 483 (S.D.N.Y. 1964) ........................................................31

*United States v. Hamm*,
659 F.2d 624 (5th Cir. 1981) .......................................................................29

*United States v. Hayden*,
860 F.2d 1483 (9th Cir. 1988) .....................................................................42

*United States v. Heaton*,
458 F. Supp. 2d 1271 (D. Utah 2006)...........................................................32

*United States v. HSBC*,
863 F.3d 125 (2d Cir. 2017) ........................................................................33

*United States v. Jacobo-Zavala*,
241 F.3d 1009 (8th Cir. 2001) .....................................................................46

*United States ex rel. Kelly v. Serco, Inc.*,
846 F.3d 325 (9th Cir. 2017) .......................................................................40

*United States v. King*,
257 F.3d 1013 (9th Cir. 2001) .....................................................................40

*United States v. Marion*,
404 U.S. 307 (1971)....................................................................................20

iv

*United States v. Mejia-Cendejas*,
  29 F.3d 636 (9th Cir. 1994) ...............................................................19

*United States v. Messina*,
  806 F.3d 55 (2d Cir. 2015) .................................................................34

*United States v. Montalvo*,
  581 F.3d 1147 (9th Cir. 2009) ...........................................................21

*United States v. Novak*,
  476 F.3d 1041 (9th Cir. 2007) ...........................................................21

*United States v. Olmos-Gonzales*,
  993 F. Supp. 2d 1234 (S.D. Cal. 2014)...............................................32

*United States v. Olvero-Hernandez*,
  2012 WL 1068979, at *2 (S.D. Cal. Mar. 29, 2012) ..........................49

*United States v. Orrantia*,
  Case No. 22-CR-01360-MIS (D.N.M., Sep. 3, 2024) .........................13

*United States v. Perkins*,
  850 F.3d 1109 (9th Cir. 2017) ...........................................................40

*United States v. Petri*,
  731 F.3d 833 (9th Cir. 2013) ..............................................................20

*United States v. Pimentel*,
  932 F.2d 1029 (2d Cir. 1991...............................................................33

*United States v. Ray*,
  375 F.3d 980 (9th Cir. 2004) ..............................................................34

*United States v. Rinaldi*,
  434 U.S. 22 (1977)...............................................................*passim*

*United States v. Rosenberg*,
  108 F. Supp. 2d 191 (S.D.N.Y. 2000) .................................................33

*United States v. Salinas*,
  693 F.2d 348 (5th Cir. 1982) ..........................................................32, 33

v

*United States v. Thorpe*,
148 F.4th 768 (D.C. Cir. 2025)......................................................43, 46, 48

*United States v. Thorpe*,
2023 WL 2139399 (D.D.C. Feb. 21, 2023)..................................................*passim*

*United States v. Valenzuela*,
2023 WL 6276280 (9th Cir. Sept. 26, 2023) ......................................................13

*United States v. Valenzuela*,
Case No. 21-CR-1056-DMS (S.D. Cal., Sep. 13, 2022) ...................................13

*United States v. Vonn*,
535 U.S. 55 (2002)............................................................................................22

*United States v. Wallace*,
848 F.2d 1464 (9th Cir. 1988) ....................................................................28, 42

*United States v. Weber*,
721 F.2d 266 (9th Cir. 1983) ............................................16, 26, 27, 35

*United States v. White*,
782 F.3d 1118 (10th Cir. 2015) ........................................................................34

*Williams v. Taylor*,
529 U.S. 420 (2000)..........................................................................................20

## Rules

Fed. R. Crim. P. Rule 11 ..............................................................................12, 14

Fed. R. Crim. P. Rule 48 ...............................................................................*passim*

## Statutes

18 U.S.C. § 242 ...............................................................................................*passim*

18 U.S.C. § 3731 ..................................................................................................2

28 U.S.C. § 1291 ..................................................................................................2

**Other Authorities**

1 Madeleine J. Wilken & Nicholas Triffin, Drafting History of the Federal Rules of Criminal Procedure (1991) ..................................................................24

Advisory Comm. on Rules of Criminal Procedure, Conference of Senior Circuit Judges, Minutes of Meetings 1120 (Feb. 23, 1943), https://perma.cc/EG8Q-CZ3W)..................................................................23

Thomas Ward Frampton, "Why Do Rule 48(a) Dismissals Require 'Leave of Court,'" 73 Stan. L. Rev. Online 28, 32-33 (2020)..........................23

United States Constitution Article III ............................................................18, 34

3B Wright & Miller, Federal Practice and Procedure § 802 (4th ed. June 2024 update) ..................................................................32

## I.  STATEMENT REGARDING ORAL ARGUMENT

Amicus Curiae respectfully requests oral argument in this matter, which presents an issue of first impression in this Circuit.  Oral argument likely would help the Court resolve this issue.

## II.  STATEMENT OF JURISDICTION

The parties assert that this Court has jurisdiction under 28 U.S.C. § 1291.[1]

## III.  ISSUES PRESENTED

1.  Whether the district court had discretion under Rule 48(a) of the Federal Rules of Criminal Procedure to deny the Government's motion to dismiss this criminal case after a jury convicted Defendant and after the Defendant was sentenced.

2.  Whether the district court abused its discretion under Rule 48(a) of the Federal Rules of Criminal Procedure in denying the Government's motion to dismiss this criminal case after a jury convicted Defendant and after Defendant was sentenced.

3.  Whether this case is moot.

## IV.  STATEMENT OF THE CASE

Defendant Trevor James Kirk, a Los Angeles County Deputy Sheriff, was

---

[1] Court-appointed amicus is aware that the victim in this case, J.H., will be filing an amicus brief arguing for affirmance of the judgment below on grounds different from that advanced by the district court.  This includes arguing that the district court had been divested of jurisdiction to consider the Government's motion to dismiss when Kirk filed his notice of appeal and that 18 U.S.C. §3731 limits the Government's appeal rights in criminal cases.  Although the victim's arguments are important, court-appointed amicus has no occasion to address them because this Court has appointed him to argue in support of the district court's August 8 order.

charged with willful deprivation of rights under color of law, in violation of 18 U.S.C. § 242 after he threw unarmed victim J.H. to the ground and pepper-sprayed her twice in the face. A jury convicted Defendant after a three-day trial. Prior to sentencing, the Government filed a motion to dismiss under Federal Rule of Criminal Procedure 48(a) seeking to dismiss solely the felony allegations in the indictment, which the district court granted. The district court then sentenced Defendant to four months of imprisonment, well below the Guidelines range. Following Defendant's sentencing, the Government filed a second motion to dismiss under Federal Rule of Criminal Procedure 48(a), this time seeking to dismiss the entire indictment , which Defendant did not oppose. The district court denied the remainder of the motion and the Government appealed. This Court appointed Erwin Chemerinsky as amicus curiae to defend the ruling of the district court.

### A.    Factual Background

This case began on a hot summer day in the parking lot of a WinCo Foods grocery store ("WinCo") in Lancaster, California. On June 24, 2023, Defendant Trevor Kirk, a Sheriff's Deputy with the Los Angeles County Sheriff's Department ("LASD"), and his partner responded to a call of a man and woman reportedly fighting with loss prevention at the WinCo. 2-SER-486–87.[2]

---

[2] "SER" refers to Supplemental Excerpts of Record and is preceded by the

Defendant's partner, Alejandre, arrived at the WinCo parking lot before Defendant, and found D.B., and J.H., who is a 58-year-old Black woman with asthma and is the victim in this case, pulling out of a handicapped parking spot. Trial Ex. 36; 2-SER-486. When D.B. and J.H. saw Alejandre, they pulled back into the parking spot and made no attempt to flee. Trial Ex. 36. D.B. exited the car holding nothing but a cake, while J.H. remained in the car. Trial Exs. 1, 36. Keeping his distance, Alejandre issued a series of commands to D.B., who ultimately complied with Alejandre's instruction to "just have a seat on that rock." Trial Ex. 1; 1-SER-143. Alejandre informed Defendant over the radio that "the female"—referring to J.H.—"is gonna be in the car." Trial Ex. 1; 1-SER-143.

Defendant, who had been told that J.H. would be in the car when he arrived, was apparently unconcerned and paid her no attention. Trial Ex. 5; 1-SER-7–8. Instead, Defendant and Alejandre approached D.B. together and successfully de-escalated the situation. Alejandre asked D.B.: "what is going on, dude?" and told him to "just relax." Trial Ex. 1; 1-SER-143. Defendant calmly told D.B.: "we're

---

applicable volume number and followed by applicable page numbers. "JER" refers to Joint Excerpts of Record (Dkt. 43.1) and is followed by applicable page numbers. "Gov. Br." refers to the United States' Opening Brief (Dkt. 42.1). "Trial Ex." refers to certain video exhibits used during the trial. Amicus curiae has filed a Motion to Transmit Physical Exhibits concurrently with the filing of this Answering Brief. While amicus curiae does not believe that review of these video exhibits is necessary to resolve an issue of disputed fact, amicus curiae has filed the Motion to Transmit Physical Exhibits in an abundance of caution.

just going to pat you down, bud, big dog"; echoed his partner's instruction that D.B. should "relax"; and explained: "you're not under arrest, you're being detained." Trial Ex. 1; 1-SER-143–44. Together, Defendant and Alejandre succeeded in using de-escalation and communication techniques to detain D.B. without incident. Trial Exs. 1, 5; Gov. Br. at 5.

Defendant's approach to victim J.H. diverged starkly from the calm, measured way he handled D.B.'s detention. As Defendant and Alejandre were detaining D.B., J.H. walked toward the deputies and told them, while keeping her distance, "by law you have to tell him the reason you [sic] detaining him." Trial Exs. 1, 55; 1-SER-144; 1-SER-176. While filming the deputies detaining D.B. on her cellphone, she told the deputies, "it's on YouTube Live." *Id.* Alejandre informed Defendant for a second time that J.H. was D.B.'s wife, and Defendant turned to see her filming the deputies with a cellphone in one hand and a surgical mask in the other. Trial Ex. 5; 1-SER-193. Defendant charged toward her, closing the distance between them in seconds. Trial Ex. 5.

Unlike his conduct mere moments before while detaining D.B., Defendant did not ask any questions, issue any instructions, explain what he was doing, or otherwise communicate with J.H. in any way. Trial Ex. 5; 1-SER-154. He tried to seize J.H.'s phone with both hands, then grabbed her right arm, leading J.H. to tell him, "You can't touch me!" Trial Ex. 5; 1-SER-154; 1-SER-182; 1-SER-187–90.

5

With no explanation for why Defendant was grabbing her, J.H. reflexively pulled her arm away and attempted to swipe away Defendant's grasp.  Trial Exs. 5, 36, 45, 52.[3]  Defendant twice said "Stop", but did not say what he was trying to do or what J.H. was supposed to stop doing.  Trial Exs. 5, 52, 55; 1-SER-154, 1-SER-172, 1-SER-177.

Within seconds of grabbing J.H., and without giving J.H. any instructions, warnings, or commands, Defendant violently slammed J.H. to the hard concrete of the WinCo parking lot.  Trial Exs. 5, 36, 52, 55; 1-SER-154, 1-SER-172, 1-SER-177.  J.H. screamed as she barreled face-first to the ground.  Trial Exs. 5, 52; 1-SER-154, 1-SER-172, 1-SER-177.

After J.H. struck the ground, Defendant put his knee on her body, pushed her head to the concrete, and yelled at her to get on the ground, even though she was already there.  Trial Exs. 5, 52; 1-SER-154–55, 1-SER-172–73, 1-SER-212.  J.H. again said Defendant's actions were "already on YouTube Live"; seconds later, Defendant cocked his arm back, closed his fist, and threatened, "Stop or you're going to get punched in the face."  Trial Exs. 1, 5, 52; 1-SER-155, 1-SER-173, 1-

---

[3] The Government now contends that J.H. "resisted" Defendant "by swatting [his] hands away" then "lowered her hand and took a 'blading' stance."  Gov. Br. at 6 (citing JER-110, JER-178).  The district court found that "the jury could reasonably find that J.H. did not swing at Defendant.  Rather, Defendant grabbed J.H.'s arm first, and then J.H. reflexively swiped her hand down through the air without hitting Defendant."  1-SER-112.

SER-179–80.  As D.B. called out in the background, "she's got cancer!", Defendant put his knee on J.H.'s neck.  Trial Exs. 1, 5, 52; 1-SER-145, 1-SER-155, 1-SER-173, 1-SER-216–18.  Defendant ordered J.H. to "turn around," but she could not move with Defendant's knee on her neck.  *Id.*  J.H. pleaded, "Get your neck off my, off my, I can't breathe!"  Trial Exs. 5, 52; 1-SER-155, 1-SER-173.  With J.H. on her back clutching only her surgical mask in one hand and her prescription sunglasses in the other, Defendant radioed that he was "in a fight at the WinCo."  *Id.*; 1-SER-224.  J.H. responded, "I can't breathe!"; "There's no fight!"; and "You threw me down to the ground!" as Defendant again said only, "Stop!"  Trial Exs. 5, 52; 1-SER-155, 1-SER-173.

Seconds later, without any intervening commands, as J.H. laid prostrate on the ground, neither resisting nor threatening Defendant in any way, Defendant pepper sprayed J.H. in the face twice.  Trial Exs. 5, 52; 1-SER-155–56, 1-SER-173–74, 1-SER-225–28.  After these sprays and as J.H.'s body languished on the ground, for the first time, Defendant ordered J.H., "put your hands behind your back!"  *Id.*  Despite this command, Defendant continued leaning on J.H. with one of her arms pinned beneath her, and J.H. said "I can't!" in response to Defendant's impossible command.  *Id.*  Defendant then rotated J.H.'s body, handcuffed her, and directed J.H. to his patrol vehicle with J.H. unable to see due to the pepper spray.  Trial Exs. 1, 5, 6, 52; 1-SER-147–50, 1-SER-155–58, 1-SER-174–75.

7

Before being put in Defendant's patrol vehicle, J.H. told Defendant, "I didn't do anything!  You was mad because I videoed and put it on YouTube."  Trial Exs. 1, 5; 1-SER-147, 1-SER-157.  Defendant responded, "No I'm mad because you're not listening."  Trial Ex. 2; 1-SER-151.

Medical records, photographic evidence of J.H.'s injuries, and testimony from a treating physician detailed the extent of bodily injury Defendant's attack inflicted on J.H.  1-SER-38–52, 1-SER-178, 1-SER-229–77.  After being hospitalized, J.H. was diagnosed with, among other things, blunt head injury, multiple contusions, chemical conjunctivitis, and a closed fracture of her wrist, which her treating physician testified "were the results of the use of force incident."  1-SER-49–52, 1-SER-237–38.  Video footage in the immediate aftermath of Defendant body slamming J.H. and spraying her twice with pepper spray shows J.H. with her eyes swollen shut, spitting profusely, gasping for air, and struggling to walk and breathe, as she told Defendant she had asthma.  Trial Exs. 2, 6, 7, 15, 17, 24; 1-SER-151–52, 1-SER-158–59, 1-SER-161–64.  An asthma inhaler belonging to J.H. was recovered from the scene.  Trial Ex. 9; 1-SER-9, 1-SER-160, 1-SER-191–92.  Nearly an hour later at the hospital, where J.H. was released from custody, J.H. complained of her eyes still "burning," as a nearby patient struggled to breathe and a nurse coughed due to the pepper spray residue that still clung to J.H.  Trial Exs. 20, 21; 1-SER-167–68, 1-SER-235.

Defendant had received extensive training on the use of force, de-escalation tactics, and the policy regarding the use of pepper spray. 1-SER-10–18, 2-SER-279–483, 2-SER-492–98. Defendant knew the importance of this training. In both March 2022 and February 2023, which was just a few months before his use of excessive force against J.H., Defendant completed training courses in Strategic Communications, which focused on de-escalation, slowing down a situation, and gaining voluntary compliance through a progression of tactical communications "to try to avoid using force whenever possible." 1-SER-19–30, 2-SER-179–81, 2-SER-311–23. The importance of following his training and LASD policy on use of force and de-escalation would have been fresh in Defendant's mind because, on May 31, 2023, just over three weeks before Defendant's use of force on J.H., LASD recommended that Defendant's entire station receive a briefing on de-escalation, which Defendant knew was recommended as the result of a separate use of force incident in which he was involved in June 2022. 2-SER-489–491.

At the trial, the jury heard testimony by expert witness Roger Clark, a retired LASD officer with more than 27 years of experience, who testified that Defendant's actions toward J.H. were "not acceptable" and detailed the many ways he violated LASD policy and training. 1-SER-55. This included Defendant placing his hands on J.H. when there was "no credible threat" and "no indication of interference," and "simply giv[ing] an instruction" would have been appropriate,

9

(1-SER-56); taking J.H. "by the neck" and throwing her down "face-first into the asphalt, without any type of holding on to her or preventing it," which was "contrary to every aspect of the training" on "controlled force," (1-SER-58–60); and using pepper spray against J.H. without active resistance or a credible threat (much less both, as required), when J.H. had no weapon and was holding only her prescription glasses and a surgical mask. 1-SER-61. Clark further testified that, in a situation where someone "is documenting or filming" an officer, an officer being "a little more rough with them . . . because they're annoyed" is "absolutely forbidden" as "[r]etaliatory force[.]" 1-SER-57.

Following three days of trial, the jury convicted Defendant of a felony violation of 18 U.S.C. § 242, finding that victim J.H. suffered bodily injury, the offense involved the use of a dangerous weapon, or both. 1-SER-2–3.

### B. Defendant Moved For A Judgment Of Acquittal, Which The Government Opposed And The Court Denied.

After trial, Defendant moved for a judgment of acquittal. 1-SER-68–79. The Government strenuously opposed the motion, arguing that its "evidence was direct and comprehensive" and that LASD "policies and training further established that force was supposed to be used as a 'last resort,' contrary to Defendant's immediate resort to force after seeing J.H. filming him on her cellphone. And an expert with nearly three decades of experience at LASD explained how Defendant's conduct was contrary to LASD's force policies and

10

training." 1-SER-84 The Government eviscerated Defendant's request for acquittal, writing: "Without any credible basis for his violent conduct or meaningful response to the evidence of his retaliation and anger—which the jurors saw and heard with their own eyes and ears—defendant falls back on distorting the record regarding the policies and training he received at LASD, which informed his state of mind." 1-SER-106.

The district court denied Defendant's motion, finding there was sufficient evidence to support a finding that "Defendant used 'objectively unreasonable' force on J.H." based on "extensive body cam footage of the incident." 1-SER-111. The video showed that "[w]hen Defendant first approached J.H., he did not provide any commands or try to de-escalate the situation. Rather, he threw her to the ground, pinned her there, and pepper sprayed her face two times[,]" which was "alone sufficient for a rational juror to find that Defendant used objectively unreasonable force." *Id.* The court continued that, beyond the video footage, there was "evidence that Defendant's use of force violated LASD policy" including because "deputies are trained to use force as a 'last resort' and that they are obligated, when feasible, to use de-escalation techniques and 'alternates other than force'" and "to only use pepper spray when they encounter 'active resistance plus a threat.'" *Id.* The court held that "[f]rom the body-cam footage, the jury could have reasonably inferred that Defendant did not follow this training. The jury

11

could have reasonably found that 'alternates other than force' were 'feasible' in this situation, as J.H. did not have a weapon, did not attack Defendant, was not attempting to flee, and was not actively committing a crime.  The jury could have also reasonably found Defendant's use of pepper spray violated LASD policy, as the evidence was sufficient for the jury to conclude that Defendant did not encounter 'active resistance plus a threat.'"  1-SER-111–12.  The court further held that there was sufficient evidence to support a finding that Defendant acted willfully.  1-SER-112–13.

> **C.**     **The Government Moved To Dismiss The Felony Charge Against Defendant, And Both Sides Agreed To Seek A Noncustodial Sentence Of One Year's Probation.**

On May 19, 2025, the Government moved to dismiss the portions of the indictment that elevated Defendant's charge from a misdemeanor to a felony (JER-83), and filed a Rule 11(c)(1)(C) plea agreement in which it agreed to move to strike the portions of the jury verdict which elevated Defendant's conviction from a misdemeanor to a felony.  1-SER-114–32.  Defendant agreed to plead guilty to a misdemeanor violation of 18 U.S.C. § 242.  1-SER-115–16.  Both the Government and Defendant agreed to seek a sentence of one-year probation.  1-SER-123.  In the plea agreement, Defendant acknowledged "that the Court and the United States Probation Office are not parties to this Agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts,

12

sentencing factors or sentencing. Defendant understands that the Court will determine the facts, sentencing factors, and other considerations relevant to sentencing and will decide for itself whether to accept and agree to be bound by this agreement." 1-SER-129.

When the district court asked the Government what prompted its request to dismiss the allegations in the indictment that made Defendant's charge a felony, "[t]he Government explained that, upon further review of the facts of the case, it believed that Defendant's conduct fell on the lower end of the excessive force spectrum."[4] JER-126. The Government "emphasized potentially misleading

---

[4] A brief review of sentences in factually similar cases suggests this is wrong. In *United States v. Orrantia*, a former Customs and Border Patrol Officer, Orrantia, became upset during a border inspection when an individual appeared to be looking at Orrantia's badge and said he wanted to see Orrantia's name. No. 24-2132, 2026 WL 1209035, at *2 (10th Cir. May 4, 2026). Orrantia grabbed the victim and tried to pull him out of his truck before throwing him to the ground, causing the victim to hit his head on a brick barrier. *Id.* Orrantia was convicted and sentenced to 20 months' imprisonment for his violation of 18 U.S.C. § 242. *See* Dkt. 148, Judgment, at p. 3, *United States v. Orrantia*, Case No. 22-CR-01360-MIS (D.N.M., Sep. 3, 2024).

In *United States v. Valenzuela*, a former Customs and Border Patrol officer was convicted of deprivation of rights under color of law in violation of 18 U.S.C. § 242 where video footage showed Valenzuela "almost immediately pulled [the victim] from the car and tackled him" "to the ground." *United States v. Valenzuela*, No. 22-50212, 2023 WL 6276280, at *1 (9th Cir. Sept. 26, 2023). A district court in the Southern District of California sentenced Valenzuela to twelve months in custody for his violation of 18 U.S.C. § 242. *See* Dkt. 73, Amended Judgment, *United States v. Valenzuela*, Case No. 21-CR-1056-DMS (S.D. Cal., Sep. 13, 2022). The Government has not explained what it believes the "spectrum" of excessive force conduct comprises and what exactly would constitute excessive

evidence and [that it had] made arguments not fully supported by evidence"—namely, that it had relied "on the County's Use of Force procedures" and that it had argued "that a violation of those procedures necessarily meant that the force used was unreasonable." *Id.*

### D.     The Court Granted The Request To Lower The Offense To A Misdemeanor But Rejected The Stipulated Sentence, Ultimately Sentencing Defendant To A Below-Guidelines Sentence Of Four Months In Custody.

The district court granted the Government's motion under Rule 48(a) to dismiss the felony portions of the indictment. JER-128. However, the court rejected the Rule 11(c)(1)(C) plea agreement, explaining that there was no need for Defendant to plead guilty to a misdemeanor where he had already been convicted of violation of 18 U.S.C. § 242, and the felony enhancements in the indictment had been dismissed and thus, "the jury has already convicted Defendant of the misdemeanor[.]" JER-129. The court then rejected the "stipulated sentence of one-year probation," explaining:

> Straight probation does not match the facts of this case. Defendant committed the offense—the willful use of unreasonable force—while acting under color of law as a police officer. Police officers are entrusted with protecting the public, not harming them. By willfully using unreasonable force against J.H., Defendant broke that trust. A sentence of straight probation does not sufficiently reflect Defendant's

---

force on the "higher end" of that spectrum if it is not throwing an elderly woman to the ground face-first, pepper spraying her directly in the face not once but twice, and causing numerous contusions, skin and eye irritation, breathing difficulty, and a closed wrist fracture.

14

breach of duty and the manner in which he breached that duty.

JER-129–30.

Under 18 U.S.C. § 242, a defendant convicted of a misdemeanor violation may be imprisoned for a maximum of 12 months in custody. The United States Probation Office calculated Defendant's Guideline range under the United States Sentencing Commission's Guidelines Manual as 108–120 months' imprisonment, and recommended a sentence of 87 months' imprisonment. JER-138. In the plea agreement, Defendant and the Government agreed that Defendant's guidelines range under the United States Sentencing Commission's Guidelines Manual was 12–18 months' imprisonment and a fine of $5,500–$55,000. JER-137. During Defendant's sentencing hearing on May 19, 2025, the victim in this case, J.H., spoke about the impact Defendant's attack has had on her life. She told the court that when Defendant charged at her, she "saw the rage in his face" and

> feared for my life. . . . He constantly sprayed me with pepper spray in the face. He kept telling me to stop resisting, even though I was unable to move and could not breathe. . . . He had the full weight of his body on my neck. . . . I was certain that I was going to die.

JER-10. J.H. explained that, after the assault she no longer "feel[s] safe in public" and experiences "excessive flashbacks and nightmares. . . . Trevor Kirk's actions resulted in a debilitating concussion, permanent emotional, mental, and physical scarring, and a fractured arm." JER-11. On June 2, 2025, the district court sentenced Defendant to four months' imprisonment and a special assessment of

15

$25. JER-94.

### E. Nearly Two Months After Sentencing, The Government Filed A Second Motion To Dismiss, Seeking To Dismiss The Entire Indictment

Nearly two months later, on July 29, 2025, the Government filed a second motion to dismiss consisting of just three paragraphs, this time seeking to dismiss the entire indictment. 1-SER-133–36. In a brief supplement, the Government referred back to its argument at the hearing on its previous motion to dismiss that it had "misgivings about the case" and that "a sentence of imprisonment would be unreasonable and . . . intolerable" such that "in the exercise of its prosecutorial discretion, the government has determined that the interests of justice warrant dismissal of the case[.]" 1-SER-138–39.

On August 8, 2025, the district court issued its order denying the Government's motion to dismiss. In it, the court held that: (1) "courts may deny Rule 48(a) motions—even when uncontested—'if the motion is prompted by considerations clearly contrary to the public interest.'" JER-85 (quoting *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983)); (2) the Rule 48(a) motion to dismiss the indictment was "motivated not by the discovery of new evidence or reconsideration of the case, but by disagreement with the Court's decision to sentence Defendant to four months in prison." JER-87; and (3) the Rule 48(a) motion to dismiss was contrary to the public interest. JER-93.

16

## V.    SUMMARY OF ARGUMENT

Rule 48(a) of the Federal Rules of Criminal Procedure conditions dismissal of an indictment on "leave of court."  That language is not decorative.  It reflects a deliberate departure from the common law rule that allowed prosecutors to dismiss charges at will.  Courts have consistently held—and the Supreme Court has assumed without disagreeing—that the leave-of-court requirement vests district courts with discretion to deny a Rule 48(a) motion that is clearly contrary to the public interest, even when the defendant consents to dismissal.

The district court here did not abuse its discretion in denying the Government's motion to dismiss the indictment.  The district court, which presided over the jury trial, was well-positioned to assess Defendant's conduct and impose an appropriate sentence.  Following the trial, a jury convicted Defendant of willfully using unreasonable force against an unarmed 58-year-old woman.  The district court sentenced him to four months in custody—a sentence well below the Guidelines range—after the Government itself had already obtained partial dismissal as to the felony charge.  Nearly two months later, after nothing changed except the imposition of that sentence, the Government moved to dismiss the entire indictment.  It offered the same justifications it had advanced before sentencing. The district court found, on the basis of an uncontradicted factual record and its own observations having presided over the trial and post-trial proceedings, that the

17

Government's stated reasons were pretextual and that its actual motivation was to prevent the sentence from being carried out.

That finding is not seriously contested on appeal. And it is dispositive. A district court is within its discretion to find that a Rule 48(a) motion filed to nullify a lawfully imposed sentence—not because new evidence emerged, not because the prosecution lacks merit, but because the Executive Branch disagrees with the Judiciary's sentencing decision—is contrary to the public interest. Sentencing is a core judicial function, committed to the Judiciary by Article III. Allowing the Government to circumvent that function through a dismissal motion would convert Rule 48(a) into an executive veto over the Judiciary's most fundamental power, disrupting rather than preserving the separation of powers.

The Government's separation of powers argument—that the district court usurped the Executive's authority in refusing to dismiss the indictment—inverts the proper analysis. Rule 48(a) itself embodies a separation of powers choice: Congress deliberately placed judicial oversight on the prosecutorial power to dismiss. That oversight is most important—not least—when the Government seeks dismissal after conviction and sentencing, when prosecutorial discretion is at its lowest ebb and the Judiciary's sentencing authority has already been exercised. The district court did not usurp executive power; it defended judicial power from executive encroachment.

18

Finally, this case is not moot. The Government successfully prosecuted Defendant to conviction and sentence. It simply dislikes the outcome. Rule 48(a)'s leave-of-court requirement exists precisely to prevent that kind of unilateral executive nullification of judicial proceedings, and the district court properly exercised its limited but real discretion to deny the motion.

The district court's order should be affirmed.

## VI.  STANDARD OF REVIEW

"Whether Rule 48(a) gives the district court discretion to refuse to dismiss an indictment is a question of law" that is reviewed de novo. *United States v. Mejia-Cendejas*, 29 F.3d 636 (9th Cir. 1994) (Table). But the Court "review[s] a district court's decision whether to grant the motion to dismiss under an abuse of discretion standard[.]" *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000).

## VII.  ARGUMENT

### A.  District Courts Have Discretion To Deny A Motion To Dismiss Under Rule 48(a) Of The Federal Rules Of Criminal Procedure.

The unambiguous text of Rule 48(a) is clear: district courts have discretion to deny a motion to dismiss a criminal indictment. The Rule provides no exceptions. Although this is, on its own, sufficient to end the inquiry, the drafting history of Rule 48(a) confirms that it was intentionally drafted to vest district courts with authority to deny a Rule 48(a) Motion, and federal courts have

19

repeatedly reached this same conclusion.

> **1.     The text of Rule 48(a) clearly grants judicial discretion to decide whether to deny a motion to dismiss an indictment.**

The plain text of Rule 48(a) conditions an indictment's dismissal upon court approval.  Fed. R. Crim. P. 48(a).  Rule 48(a) reads: "The government may, ***with leave of court***, dismiss an indictment, information, or complaint."  Fed. R. Crim. P. 48(a) (emphasis added).  The text is explicit: without leave of court, there can be no dismissal.  Any contrary interpretation offends common sense and runs afoul of established principles of statutory interpretation.

"[S]tatutory interpretation requires courts to 'presume that the legislature says in a statute what it means . . . [t]hus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.'"  *Mi Familia Vota v. Fontes*, 129 F.4th 691, 712 (9th Cir. 2025) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)).  "[A]bsent an indication to the contrary from Congress[,]" courts must "give the words of a statute their 'ordinary, contemporary, common meaning[.]'"  *Id.* (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)).  These established rules of statutory interpretation apply equally to the Federal Rules of Criminal Procedure.  *See United States v. Petri*, 731 F.3d 833, 839 (9th Cir. 2013) ("Because the Federal Rules of Criminal Procedure, once effective, have the force and effect of law, we apply 'traditional tools of statutory construction' to interpret them.") (citing *United States v. Marion*, 404 U.S. 307,

20

319 (1971) and quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988)). The Rule is clear: leave of court is required to dismiss an indictment under Rule 48(a), and the Rule does not provide any exceptions.

Interpreting the Rule as the Government urges, in a manner that ignores the "leave of court" requirement, would violate the "cardinal principle of statutory construction" that courts must avoid a statutory interpretation which renders any word or phrase "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *see also United States v. Novak,* 476 F.3d 1041, 1048 (9th Cir. 2007) (stating that courts should "avoid whenever possible statutory interpretations that result in superfluous language"); *United States v. Montalvo*, 581 F.3d 1147, 1153 (9th Cir. 2009) (citing *Novak* in support of rejection of an interpretation of a Federal Rule of Criminal Procedure that would render the Rule's language superfluous). Were the Court to accept the Government's position that a district court has no discretion to deny a Rule 48(a) motion to dismiss, the phrase "with leave of court" would be entirely superfluous. The only permissible reading is that the Government can only dismiss an indictment under Rule 48(a) when the court grants it leave to do so, regardless of whether the motion is opposed and whether it occurs before or after sentencing.

21

**2. The history of Rule 48(a) confirms that courts have discretion to decide whether to permit dismissal of an indictment.**

Because the text of Rule 48(a) is clear on its face, there is no need to look to other sources to interpret it. However, the Rule's history also confirms that the leave of court provision is not extraneous.

To the extent there is any doubt about the drafters' intent, they explained it clearly in the Advisory Committee notes. Referring to the new first sentence of Rule 48(a), which states that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint[,]" Fed. R. Crim. P. 48(a), the drafters wrote:

> The first sentence of this rule will change existing law. The common-law rule that the public prosecutor may enter a nolle prosequi in his discretion, without any action by the court, prevails in the Federal courts. This provision will permit the filing of a nolle prosequi *only by leave of court*. This is similar to the rule now prevailing in many States.

Fed. R. Crim. P. 48(a) advisory committee's note 1 (emphasis added); *see also In re Pangang Grp. Co., LTD.*, 901 F.3d 1046, 1055 (9th Cir. 2018) (noting that "the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule" and "[i]n discerning the meaning of a rule, courts may also consult the rulemaking history of the relevant Advisory Committee proceedings for further guidance") (quoting *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002)). Here, the Advisory Committee Note eliminates all doubt: the "leave of court" provision was

22

deliberately inserted into Rule 48(a) to give the district court the discretion to grant or deny the Government's request to dismiss an indictment.

The rulemaking history confirms this. The Advisory Committee first discussed the issue of whether to require leave of court to dismiss an indictment on January 13, 1942. *See* Thomas Ward Frampton, "Why Do Rule 48(a) Dismissals Require 'Leave of Court,'" 73 Stan. L. Rev. Online 28, 32–33 (2020). Over the ensuing two years, the Advisory Committee continued to debate whether to include a leave of court requirement, thereby eliminating the Government's previously unfettered right to dismiss an indictment. *Id.* From the start, the animating principle behind the leave of court provision was not only, as the Government urges, avoiding harassment of the defendant, but the concern that political considerations would result in improper dismissals of criminal indictments. *Id.* at 32–36 (noting that one contingent of the Committee "insisted that prosecutors could be entrusted with the responsibility to wield their dismissal power responsibly, free from judicial oversight, while the other . . . insisted that a 'leave of court' requirement provided a salutary check against the prosecutor whose independence was compromised by orders from 'Washington'") (quoting Advisory Comm. on Rules of Criminal Procedure, Conference of Senior Circuit Judges, Minutes of Meetings 1120 (Feb. 23, 1943), https://perma.cc/EG8Q-CZ3W). When an initial vote on the leave of court requirement resulted in a 7-7 split, the

23

Advisory Committee agreed on a compromise, approving draft language which "abandoned the leave-of-court requirement," but "requir[ed] that prosecutors first place the reasons for any dismissal on the record." *Id.* at 33. In reviewing a draft of the Committee's Rules, the Supreme Court expressed concern that Rule 48 "apparently gives the Attorney General or the United States Attorney unqualified authority to *nolle pros* a case without consent of the court. Is this now the law, and in any event should it be the law, any more than that the Government can confess error in a criminal case without the consent of the court?" *Id.* at 34–35 (quoting 1 Madeleine J. Wilken & Nicholas Triffin, Drafting History of the Federal Rules of Criminal Procedure, at xii (1991)).

When the time came for the Supreme Court to finalize Rule 48, "the Court eliminated the requirement that prosecutors provide a 'statement of the reasons' for a dismissal, imposing instead a requirement that prosecutors obtain 'leave of court.'" *Id.* at 37. Contrary to the Government's position today, the leave of court requirement was inserted deliberately to require judicial oversight over the dismissal of indictments with the purpose of preventing the politically motivated dismissal of cases.[5] *Id.*

---

[5] This emphasis on allowing judges to deny politically motivated dismissals of indictments is apt in this case where the Government's shift in position resulted from a change in presidential administrations.

24

**3.** **Caselaw confirms courts have discretion to deny a Rule 48(a) motion when dismissal would be contrary to the public interest, even where a defendant consents to dismissal.**

While the Supreme Court and the Ninth Circuit have stopped short of deciding whether district courts have discretion to deny a Rule 48(a) motion to dismiss to which the defendant consents, other circuits have answered this question and held that district courts do have such discretion. The circuits which have addressed this issue have held that such discretion is appropriately exercised where dismissal would be clearly contrary to the manifest public interest. The Ninth Circuit and the Supreme Court have both noted that this is the applicable test in circuits which do hold that such discretion exists. The Ninth Circuit should hold that, based on the plain text of Rule 48(a), the history of Rule 48(a), and the persuasive reasoning of its sister circuits, district courts have discretion to deny Rule 48(a) motions to dismiss to which a defendant consents where dismissal would be clearly contrary to the manifest public interest. This inquiry requires district courts to consider prosecutors' reasons for seeking dismissal, whether the motion is brought in bad faith, whether there is a risk of prosecutorial harassment, and the Judiciary's core sentencing authority.

**(a)** **The Supreme Court has held that courts have discretion to deny a Rule 48(a) motion.**

In *United States v. Rinaldi*, the Supreme Court affirmed that the words

25

"leave of court" in Rule 48(a) "obviously vest some discretion in the court[.]" 434 U.S. 22, 29 n.15 (1977). The Court then distinguished between two different categories of Rule 48(a) litigation: where the defendant has not consented to the dismissal and where the defendant has consented, as in the instant case. *Id.*

Where the defendant does consent, the Court noted that various circuit courts have held Rule 48(a) "to permit the court to deny a Government dismissal motion *to which the defendant has consented* if the motion is prompted by considerations clearly contrary to the public interest." *Rinaldi*, 434 U.S. at 29 n.15 (emphasis added) (citing *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975); *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)). The Court took no position on this, instead finding that "[i]t is unnecessary to decide whether the court has discretion under these circumstances, since, even assuming it does, the result in this case remains the same." *Id.*

**(b) Following in the Supreme Court's path, the Ninth Circuit has taken no position on whether courts have discretion to deny a Rule 48(a) motion to dismiss where defendant consents.**

Like the Supreme Court, the Ninth Circuit has stopped short of holding that district courts may deny a Rule 48(a) dismissal even where the defendant consents. In each case, the Ninth Circuit has suggested that if such discretion exists, the standard for exercising discretion to deny the motion is where dismissal would be "clearly contrary to manifest public interest." First, in *United States v. Weber*, the

26

Government moved to dismiss the indictment with defendant's consent where newly discovered evidence, which neither the jury nor the prosecutor had previously seen, cast serious doubt on the defendant's guilt. *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983). As in *Rinaldi*, the Ninth Circuit "decline[d] to reach the question because we conclude that in this case the motion for dismissal could not fairly be characterized as 'clearly contrary to manifest public interest.'" *Id*.

In *United States v. Gonzalez*, the Ninth Circuit again declined to decide whether "a district court may ever deny an uncontested Rule 48(a) motion." 58 F.3d 459, 461 (9th Cir. 1995). The facts of the case once again did not require a resolution of that issue. In *Gonzalez*, defendant provided significant helpful cooperation to the Government, and also had not been informed of deportation-related consequences before entering his plea agreement, while his co-defendants had been so informed. *Id.* at 462–63. The Court noted that the "clearly contrary to manifest public interest" standard is "the only standard that might have been appropriate in a case involving an uncontested motion." *Id.* at 462. Ultimately, in *Gonzalez*, however, as in *Weber*, the Ninth Circuit held that the public interest was so clearly served by granting the Rule 48(a) motion that the Court did not decide on the criteria for what counts as "clearly contrary to the public interest." *Id.* at 462–63.

27

In *United States v. Garcia-Valenzuela*, 232 F.3d 1003 (9th Cir. 2000), the Ninth Circuit again stated that "the only standard" it has recognized as "possibly being appropriate to such cases" is "whether the motion was clearly contrary to manifest public interest." *Id.* at 1008. The Court noted that the Government's good faith is of "fundamental importance in deciding whether to grant leave of court under Rule 48(a)." *Id.* (citing *United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988)). The Court observed: "there is no evidence of prosecutorial harassment or that the government's motion was contrary to public interest." *Id.* Because "the government appear[ed] to have made its motion in complete good faith" and there was no indication that the motion was contrary to the public interest, the Court held that the district court abused its discretion in denying the Government's motion to dismiss. *Id.* The key open question in the Ninth Circuit is whether district courts have discretion to deny a Rule 48(a) motion to dismiss to which the defendant consents. If that discretion exists, the Ninth Circuit has indicated that the proper standard for that discretion is whether the motion to dismiss was clearly contrary to the public interest.

> **(c)** **Other circuit courts have held that district courts have discretion to deny a Rule 48(a) motion if the dismissal would be clearly contrary to the public interest.**

Consistent with Rule 48's plain language, its purpose, and the interpretive language of the Supreme Court, numerous courts have found that the inquiry looks

28

to the public interest.  In *United States v. Hamm*, the Fifth Circuit reiterated that

"**even when the defendant consents** to the motion to dismiss, the trial court, in

extremely limited circumstances . . . may deny the motion when the prosecutor's

actions clearly indicate a 'betrayal of the public interest.'"  659 F.2d 624, 629 (5th

Cir. 1981) (emphasis added) (citations omitted).

In *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973), cited

by the Supreme Court in *Rinaldi*, the D.C. Circuit emphasized that in deciding

Rule 48(a) motions, the trial court is not just "a rubber stamp for the prosecutor's

definition."  Rather, "the trial judge must provide a reasoned exercise of

discretion[.]"  *Id.*  That discretion does not disappear where a defendant consents to

dismissal.  The court explicitly discussed the considerations that govern judicial

discretion to deny a Rule 48(a) motion where the defendant consents to the

dismissal:

> A distinctly different situation is presented when the defendant concurs in
> the dismissal but the court is concerned whether the action sufficiently
> protects the public.  As to this, while there is a paucity of authority, some
> principles do emerge.  First, Rule 48(a)'s requirement of judicial leave . . .
> gives the court a role in dismissals following indictment.  Second, in the
> exercise of its responsibility, the court will not be content with a mere
> conclusory statement by the prosecutor that dismissal is in the public
> interest, but will require a statement of reasons and underlying factual basis.
> Third, the court does not have primary responsibility, but rather the role of
> guarding against abuse of prosecutorial discretion.  The rule contemplates
> exposure of the reasons for dismissal in order to prevent abuse of the
> uncontrolled power of dismissal previously enjoyed by prosecutors, and in
> pursuance of this purpose to gain the Court's favorable discretion, it should
> be satisfied that the reasons advanced for the proposed dismissal are

substantial.

*Id.* (citations, quotation marks, and footnotes omitted).  Thus, as the court below noted, the D.C. Circuit in *Ammidown* provided criteria to guide lower courts in ruling on Rule 48(a) motions even when a defendant has consented to the motion. In sum, the court identified the following criteria guiding the discretion to deny a Rule 48(a) motion: "(a) fairness to the defense, such as protection against harassment; (b) fairness to the prosecution interest, as in avoiding a disposition that does not serve due and legitimate prosecutorial interests; (c) *protection of the sentencing authority reserved to the judge*."  *Id.* (emphasis added).

While the Ninth Circuit and the Supreme Court have so far avoided directly answering the question of whether courts have discretion to deny a Rule 48(a) motion to which the defendant consents, other circuits have answered in the affirmative.  This answer makes sense given the plain text of the Rule, which contains no exception to the leave of court requirement, and the history of the Rule, which shows a deliberate decision to eliminate the prosecution's absolute power to dismiss an indictment regardless of the circumstances.

This Court should follow the well-reasoned approach of the Fifth and D.C. Circuits and hold that district courts have discretion to deny a Rule 48(a) motion, even where the defendant consents to dismissal if dismissal would be clearly contrary to the manifest public interest.

### 4. The public interest inquiry requires examination of the Government's reasons for seeking dismissal.

The requirement that the Government set forth adequate reasons for a requested dismissal is the corollary of the requirement that the Government's dismissal be in the public interest. It is for this reason that Rule 48(a) has been understood to require that prosecutors disclose their reasons for dismissing an indictment. Without disclosing the reasons for dismissal, a court cannot determine if the dismissal would be in the public interest. *See In Re Richards*, 213 F.3d 773, 788 (3d Cir. 2000) (explaining that Rule 48(a) is "a 'sunshine' provision that exposes the reasons for prosecutorial decisions").

As a court in the Southern District of New York recently explained, Rule 48(a)

> contemplates public exposure of the reasons for the abandonment of an indictment, information or complaint in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors. Accordingly, to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial and the real grounds upon which the application is based.

*United States v. Adams*, 777 F. Supp. 3d 185, 208 (S.D.N.Y. 2025) (quoting *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964); citing *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), *inter alia*).

Rule 48(a)'s leave of court requirement is meaningful only if the

31

Government provides reasons sufficient for the court to exercise genuine, independent judgment. *See Adams*, 777 F. Supp. 3d at 208 ("since the court must exercise sound judicial discretion in considering a request for dismissal, it must have sufficient factual information supporting the recommendation.") (quoting 3B Wright & Miller, Federal Practice and Procedure § 802 (4th ed. June 2024 update)). As another court has explained, "the court must make its own independent determination that dismissal is warranted. A mere conclusory statement from the government that dismissal is appropriate does not allow the court to satisfy its obligations." *United States v. Heaton*, 458 F. Supp. 2d 1271, 1271–72 (D. Utah 2006). Indeed, a district court would abuse its discretion if it did not "articulate its reasons for granting or denying leave, and it cannot discharge its duties properly unless the underlying motion accurately states the government's reasons for dismissal." *Adams*, 777 F. Supp. 3d at 208.

In sum, although the court must presume good faith on the part of the prosecutor, "it need not accept [] 'an unsupported conclusory reason' for seeking dismissal." *Adams*, 777 F. Supp. 3d at 208 (quoting *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) (cleaned up)). A court may deny a Rule 48(a) dismissal motion on the basis that only a conclusory reason has been offered "or if the proffered reason is not the real reason for dismissal." *Adams*, 777 F. Supp. 3d at 208 (citing *United States v. Olmos-Gonzales*, 993 F. Supp. 2d 1234, 1236 (S.D.

32

Cal. 2014) (denying Rule 48(a) motion without prejudice to refile where Government had provided only conclusory reasons for dismissal); *United States v. Rosenberg*, 108 F. Supp. 2d 191, 208 (S.D.N.Y. 2000) (inquiring into whether proffered reasons for dismissal were the real reasons)).

Because a court must evaluate the reasons for a dismissal, "courts have looked beyond the four corners of the motion to consider the entire record before the court—occasionally even conducting hearings—to determine if dismissal is warranted." *Adams*, 777 F. Supp. 3d at 208–09 (citing *Rinaldi*, 434 U.S. at 23, 30 (finding no bad faith on the part of the Government after conducting an "examination of the record"); *United States v. HSBC*, 863 F.3d 125, 141 (2d Cir. 2017) (noting that a monitor's report could "indeed be relevant in determining whether to grant an eventual Rule 48(a) motion," for example if there were "circumstances that suggest that the motion is being made in bad faith, thereby raising a question as to whether dismiss[al] . . . would be 'clearly contrary to manifest public interest'") (quoting *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991)); *Salinas*, 693 F.2d at 352 ("We turn to the record for evidence of the prosecutor's motivation."); *In re Richards*, 213 F.3d 773, 787–88 (3d Cir. 2000) (holding that territorial court considering Rule 48(a) motion "had discretion to hold a hearing on the parties' claims, especially in light of the checkered course of the case up to that point")).

33

**5.** **The separation of powers doctrine supports judicial discretion to deny a Rule 48(a) motion that is contrary to the public interest.**

The Government contends that a district court exercising its discretion to deny an uncontested motion to dismiss under Rule 48(a) violates the separation of powers doctrine. This assertion upends the separation of powers doctrine. Vesting courts with discretion to grant or deny a motion to dismiss under Rule 48(a) is exactly what is required under the separation of powers.

Sentencing is a "core judicial function[,]" *United States v. Ray*, 375 F.3d 980, 993 (9th Cir. 2004), which is "committed to the judicial, not executive branch of government." *United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015). "Article III of the United States Constitution confers the authority to impose punishment on the judiciary, and the judiciary may not delegate that authority to a nonjudicial officer." *United States v. White*, 782 F.3d 1118, 1141 (10th Cir. 2015).

The Government's Rule 48(a) motion was motivated by disagreement with the court's sentencing decision, arguing that any prison sentence for the Defendant would be "unreasonable and … intolerable." 1-SER-139. Although the Government ultimately argued that it had "misgivings" with the Defendant's conviction, it waited to share these grievances until after conviction and sentencing. 1-SER-138. Unlike in other cases, where new evidence came to light or cooperation with law enforcement intervened to change prosecutors' minds,

34

here, nothing changed between the end of trial and the submission of the second Rule 48(a) motion. *See Weber*, 721 F.2d at 268 (holding it was not "clearly contrary to manifest public interest" to seek dismissal after the prosecutor uncovered new facts which cast "serious and substantial doubt regarding [defendant's] guilt"); *Gonzalez*, 58 F.3d at 460, 464 (directing the district court to grant an uncontested Rule 48(a) motion where ineffective assistance resulted in defendant accepting a plea that would result in deportation, and where defendant cooperated with law enforcement). Here, by contrast, the only thing that changed between the end of the trial and the Government's Rule 48 motion was the Defendant's sentencing.

The Government attempted, by moving to dismiss the case, to usurp the power of the Judiciary to sentence the Defendant, disrupting the balance of power between the Executive and Judiciary. Allowing the Government to "reverse-engineer[] the charges" to get the preferred sentence it wanted—no jail-time— intrudes on the judicial prerogatives to sentence within the constraints set by the legislature. *See Mistretta v. United States*, 488 U.S. 361, 390–91 (1989); *United States v. Thorpe*, No. CR 13-131-1, 2023 WL 2139399 at *4 (D.D.C. Feb. 21, 2023), *aff'd*, 148 F.4th 768 (D.C. Cir. 2025).

The Government's separation of powers argument rings especially hollow in light of the plain language and history of Rule 48(a), which intentionally gives the

35

courts authority as a check in this area. Further, the separation of powers structure and the Executive Branch's ultimate authority remain intact. The Government concedes that the pardon power may still be exercised following exhaustion of this appeal. Gov. Br. at 35. The Executive Branch's unfettered authority to effectively overturn a conviction and a sentence exists in the form of a presidential pardon, not through a dismissal under Rule 48(a) which expressly requires court approval. Nowhere, of course, has the district court limited the power of the Executive to grant a pardon to the Defendant.

**B.**      **The District Court Properly Exercised Its Discretion To Deny The Motion To Dismiss Here.**

The district court did not abuse its discretion in denying the Government's Rule 48(a) motion because the jury verdict was based on overwhelming evidence that Kirk used excessive force, and no subsequently discovered information weighed in favor of dismissal. The district court was uniquely positioned, after trial, post-trial motions (including a first Rule 48(a) motion, which it granted in part), and sentencing, to exercise its discretion and conclude that the public interest would not be served by complete dismissal of the case.

The district court held that the Government's Rule 48(a) motion to dismiss the indictment was clearly contrary to the public interest because it was motivated solely by the Government's disagreement with the court's imposition of a custodial sentence. JER-93. Under these circumstances, denying the Government's motion

36

was an appropriate exercise of the Court's discretion because disagreement with the sentence is an inappropriate basis for dismissing an indictment, as it infringes upon the court's exclusive role in sentencing. Sentencing is a core judicial function. Once the court has exercised that function within the bounds set by the Legislature, the Executive's dissatisfaction with the result does not transform dismissal into a public interest. To hold otherwise would allow the Government to effectively nullify any sentence it opposes simply by moving to dismiss, converting Rule 48(a) into a veto over the Judiciary's fundamental sentencing power.

In response, the Government argues that dismissal would not be contrary to the public interest because the United States did not harass Defendant or act in bad faith, and because the public interest favored dismissal, even in the absence of new evidence. Neither is a basis for concluding that the district court here abused its discretion in denying the Government's Rule 48(a) motion.[6]

---

[6] The Government also argues that the district court abused its discretion because the separation of powers doctrine provides the Government nearly unfettered power to dismiss an indictment with the Defendant's consent, even after the Defendant has been sentenced. As discussed at length in section VII.A.5, *supra*, in fact the separation of powers doctrine wholly contradicts this position. Allowing such unfettered authority to the Executive would impermissibly intrude on the Judiciary's core and exclusive sentencing authority.

### 1. Harassment is one factor the courts consider in exercising discretion under Rule 48(a), but not the only factor.

The Government takes an extremely narrow view of the Court's role, arguing that the "principal object"—or really the only role—of the "leave of court" requirement is "to protect a defendant against prosecutorial harassment." Applying its own self-created narrow rule, the Government then argues that because Defendant consented to the dismissal, there is no concern of harassment here. Gov. Br. at 45–46 (quoting *Rinaldi*, 434 U.S. at 29 n. 15). The Government's interpretation of the Rule, and by extension its application to the facts here, is inconsistent with the law and purpose behind it.

First, by the Government's logic, district courts would have *no* discretion to deny a Rule 48(a) motion to dismiss to which the defendant consents. This is flatly inconsistent with the text of Rule 48(a), which contains no such exception. As explained above, Rule 48(a)'s text requires leave of court regardless of consent. Indeed, the Government concedes that the court's discretion here is "cabined" but not eliminated by the text of Rule 48(a). Gov. Br. at 46 (quoting *In re Richards*, 213 F.3d 773, 786–88 (3d Cir. 2000)).

The Government then argues that it "offered a nonconclusory basis for dismissal," reciting the district court's summary of the Government's justification for its first motion to dismiss the felony charge, not the entire indictment. Gov. Br. at 47. But the Government entirely omits that it was in part this very fact—that

38

nothing changed between the Government's two motions to dismiss other than the court's imposition of a four-month custodial sentence—that persuaded the district court that the Government's stated reason for seeking to dismiss the indictment was pretextual. The district court explained:

> To be sure, the Government cited its "misgivings" and "discomfort" with Defendant's conviction as reason to dismiss the case. But this explanation is inconsistent with [the] record. If the Government truly thought that Defendant's conviction was not supported by adequate evidence, it could have moved to dismiss the entire case back in May [when it filed the first Rule 48(a) motion seeking to dismiss the felony portions of the indictment]. It did not do so. Since then, nothing has changed. The Government did not uncover any new evidence. Nor did it develop any new reasons to disagree with the jury's verdict. In fact, at the May 19, 2025 hearing, the Government took the position that the evidence **was sufficient** to support an excessive force conviction, just not strong enough to warrant a felony charge.

JER-88. When the court asked the Government directly why it was "moving to dismiss the case at this point[,]" the Government answered: "the reasons get to **essentially the same comments I made in support of the government's original motion**" to strike the felony charge, and "then repeated an almost shot-for-shot remake of the arguments it made in support of its first Rule 48(a) motion and in support [of] its sentencing position." JER-88 (emphasis in original).

The Government's argument about harassment and bad faith falsely equates one purpose of Rule 48(a)—protecting defendants from prosecutorial harassment—with it being its *only* objective. The district court's ruling is not based on that and there is no requirement that it must be. The district court denied

39

the Government's motion to dismiss based on its factual finding that the Government's stated reason for seeking to dismiss the indictment was pretextual, and that the Government's true reason for seeking dismissal, to prevent Defendant from serving the sentence the court lawfully imposed, was clearly contrary to the public interest.

> **2.** **The district court did not abuse its discretion in denying the motion where the court found that the motion was pretextual.**

The Government apparently does not challenge—and therefore concedes—the district court's factual finding that the Government's stated reason for seeking dismissal was a mere pretext. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."); *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017) (same); *United States v. King*, 257 F.3d 1013, 1029 n. 5 (9th Cir. 2001), *as amended* (July 20, 2001) (Defendant who raised argument for the first time in his reply brief "waived this argument by not including it in his opening brief"). On appeal, "[f]actual findings made by the district court are reviewed for clear error." *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir. 1992). "Review under the clearly erroneous standard is significantly deferential, requiring for reversal a definite and firm conviction that a mistake has been committed." *United States v. Perkins*, 850 F.3d 1109, 1115 (9th Cir. 2017) (citation and internal

40

quotation marks omitted).

Given that it did not challenge this finding, the Government cannot now argue that the district court's finding was wrong. Even if it could, such an argument would be baseless. The Government asserted in support of its second motion to dismiss that the basis for the motion was its "'misgivings' and 'discomfort' with Defendant's conviction as reason to dismiss the case." JER-88. But yet those *same* misgivings did not cause the Government to dismiss the indictment prior to sentencing. Indeed, the Government had strongly resisted the Defendant's motion for acquittal. 1-SER-80–108. No new evidence was adduced between dismissal of the felony charge and the second motion to dismiss. The only new fact from the first motion to the second was the court's imposition of a four-month custodial sentence. The district court noted exactly this: "[T]he Government admitted that [the court's] sentence was the deciding factor when [] bringing the current motion and acknowledged that it would have sought dismissal of the entire case back in May had it known Defendant would face prison time." JER-89. These facts confirm the district court's conclusion that the "record therefore shows that this motion is aimed at preventing Defendant from serving the Court's chosen sentence of four months of imprisonment[,]" not at resolving newfound concerns over the Defendant's conviction. *Id.*

The district court cited *United States v. Thorpe* for its conclusion that a Rule

41

48(a) motion to dismiss is clearly contrary to the public interest when the Government claims a pretextual reason, but the true basis for the motion is the Government's disagreement with the court's sentence. JER-89 (citing *Thorpe*, 2023 WL 2139399 at *4). The Government makes no attempt to distinguish the *Thorpe* case beyond arguing that it is not binding on this Court because it is from another jurisdiction, and arguing that it contradicts what it describes as "*Burdeau*'s endorsement of post-sentencing selective dismissals." Gov. Br. at 59. Both arguments fail.

Although *Thorpe* is an out-of-circuit case, its logic is echoed in this Circuit's own precedents, which have reiterated that the Government's use of a Rule 48(a) motion as a "pretext to bypass" a court's decision is "a clear act of bad faith" which would be grounds to deny a Rule 48(a) motion to dismiss. *United States v. Hayden*, 860 F.2d 1483, 1489 (9th Cir. 1988); *see also Wallace*, 848 F.2d at 1468 (noting that "[a] fundamental consideration in assessing the propriety of a prosecutor's dismissal motion is whether the motion is made in 'good faith'" and affirming dismissal after determining that the Government's stated reason for requesting a Rule 48(a) dismissal was not a "sham" nor motivated by seeking "an improper tactical advantage"). Thus, even if this Court were to take the narrow view that denial of a Rule 48(a) motion to dismiss is only proper on a showing of harassment *or bad faith*, the District Court's finding that the Government's stated

42

motivation for seeking dismissal was pretextual would be sufficient to support the conclusion that the Government acted in bad faith. Moreover, on August 26, 2025—just 18 days after the district court issued the order which is challenged in the instant appeal—the D.C. Circuit affirmed *Thorpe* in a published decision, examining the text of Rule 48(a) and its common law origins and holding:

> The best reading of Rule 48(a) is that the government can dismiss criminal charges only while a prosecution is ongoing. Once the court has entered judgment, the prosecution comes to an end, and the government loses its ability to dismiss the charges (unless the judgment is vacated by some other means, as we discuss below).

*United States v. Thorpe*, 148 F.4th 768, 774 (D.C. Cir. 2025), *cert. denied*, 146 S. Ct. 1459 (2026). This published D.C. Circuit decision, which the Supreme Court declined to review, further bolsters the district court's reliance on the district court's ruling in *Thorpe*.

The Government's assertion that *Burdeau* constitutes an "endorsement of post-sentencing selective dismissals" and "establishes . . . controlling rules[,]" (Gov. Br. at 57, 59), mischaracterizes that decision. First, *Burdeau* did not involve a Rule 48(a) motion to dismiss at all and therefore nothing it said about Rule 48(a) is binding. It is dicta. Second, *Burdeau* involved a situation where the district court "did not commit legal error at any stage of these proceedings," but there was a disproportionate sentence resulting from defendant's plea which was likely based on defense counsel's poor advice. In this context, the Ninth Circuit "encourage[d]

43

the United States Attorney's Office to consider utilizing its authority under Federal Rule of Criminal Procedure 48(a) to move to dismiss one of the counts of conviction so that the sentence Burdeau receives will be one that is consistent with the purposes and objectives of our sentencing statutes." *United States v. Burdeau*, 168 F.3d 352, 354 (9th Cir. 1999). This remark—made in dicta, unsupported by any citation to authority, dealing only with the potential dismissal of a single count rather than an entire indictment, and concerning a custodial sentence of nearly 15 years rather than four months—has no application here. In this case, the Government sought to dismiss the entire case to prevent any custodial sentence, not just a single count.

Importantly, *Burdeau* did not involve a finding that the Government gave a pretextual reason for moving to dismiss. In light of the numerous cases finding that such pretextual motions are in bad faith and therefore contrary to the public interest, *Burdeau* is of no help to the Government's position here. *Burdeau* is simply a case where the Ninth Circuit believed that the interests of justice could be served by a Rule 48(a) motion post-sentencing to correct an unjust result.

### 3. The Government's remaining arguments that the court abused its discretion here are unavailing.

Under the abuse of discretion standard of review, great deference is given to the district court. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012) ("Abuse-of-discretion review is highly deferential to the district court.

44

Under this standard of review, we must 'uphold a district court determination that falls within a broad range of permissible conclusions in the absence of an erroneous application of law.'  We reverse 'only when' we are 'convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances.'") (citations omitted).  The Government has not met this high standard.  The district court here was well-positioned to exercise its discretion and there is no basis for concluding that it abused that discretion.

The Government takes the position that because "there still was *some* prosecutorial discretion left to exercise" after Defendant was tried, convicted, and sentenced, "such discretion belongs to the United States alone," and, according to the Government, that minimal discretion overpowers all of the Judiciary's sentencing authority.  Gov. Br. at 48–49.  This is wrong.  The district court's order does not intrude on the (very) limited prosecutorial discretion that remains after sentencing.  It serves as a check on it in that it properly prevents the Executive Branch from using that authority in such a way that undermines the Judicial Branch's core sentencing authority, detailed at section VII.A.5, *supra*.

The Government wrongly contends that the timing of a Rule 48(a) motion to dismiss has no bearing on the balance of power between the Executive Branch and the Judiciary.  Courts have repeatedly reiterated the principle that the Government's interest in determining when and what charges to bring wanes over

45

time to give way to the Judiciary's core sentencing function. *See Thorpe*, 2023 WL 2139399, at \*4, \*6 ("[T]he discretion of the Executive is at its height—and the discretion of the Judiciary at its nadir—when criminal charges are pending, while the discretion of the Judiciary is at its height at sentencing, which necessarily follows the resolution of the underlying charges.") (citing *Ammidown*, 497 F.2d at 619); *Thorpe*, 148 F.4th 768, 773 ("At this stage of the proceedings" when defendant has been sentenced and the judgment is final, "there is no longer a prosecution to dismiss, which means Rule 48(a) provides no authority for the government to vacate Thorpe's convictions.").

The Government's reliance on the Eighth Circuit's decision in *United States v. Jacobo-Zavala* is unavailing. Gov. Br. at 55. There, as the Government admits, the court considered a "***pre-trial*** plea agreement" in which the Government agreed to dismiss federal charges and defendants agreed to plead guilty to state charges, resulting in a shorter prison sentence. Gov. Br. at 54 (emphasis added) (citing *Jacobo-Zavala*, 241 F.3d 1009, 1014 (8th Cir. 2001)). The decision is inapposite to the Rule 48(a) motion here, which was brought ***after trial, conviction, a first Rule 48(a) motion, and sentencing***, when the Government's prosecutorial discretion interest is at its lowest, and the court's sentencing authority is at its highest.

The Government contends that its proffered explanation of "misgivings"

46

about "the fairness of Kirk's trial" was "enough to justify abandoning . . . Kirk's prosecution" since "there is no requirement that the United States submit 'new evidence' or develop 'new arguments' when it files a post-sentencing Rule 48(a) motion." Gov. Br. at 61. But the district court never purported to impose such a requirement. The issue here is not that all post-sentencing Rule 48(a) motions must be based on new evidence or arguments. Instead, the Government's failure to provide anything but recycled arguments compelled the district court to find those arguments were pretextual and, on that basis, the court exercised its discretion to deny the Rule 48(a) motion. As the district court found, the Government's post-sentencing motion to dismiss was brought solely because the Government did not like the sentence the Court imposed. In light of this factual finding, the Court properly exercised its discretion in finding that allowing the Government to usurp its sentencing authority after the sentence was imposed would be clearly contrary to the public interest.

That no appellate decision has yet upheld the denial of an uncontested motion to dismiss on the grounds that the motion was clearly contrary to the public interest is also not dispositive. Such instances are going to be inherently rare, as they should be. That no such case has yet found its way before this Court has no bearing on whether the district court abused its discretion here, a question which must be decided by the applicable facts and law. Moreover, this misleading logic

47

omits that only a handful of appellate decisions addressing Rule 48(a) even exist. The number of such cases dealing with a Rule 48(a) motion *after* conviction and sentencing is even smaller, and none are similar to the circumstances of the instant case.[7] That the Government has not tried to do this before does not provide authority to do it now.

The district court readily admitted that it has "only limited discretion to deny" a Rule 48 motion. JER-84. But the fact that its discretion was limited, and that it is rare that a Rule 48 motion would meet the high standard of being clearly contrary to the public interest is not dispositive. As the district court noted, "after sentencing, courts must consider 'the public interest [in] the protection of the sentencing authority reserved to the judge.'" JER-86 (citing *Ammidown*, 497 F.2d at 622; *Thorpe*, 2023 WL 2139399, at *4). Where, as here, "the Government uses a Rule 48(a) motion to circumvent a court's sentence," the court was absolutely correct that "it intrudes on the judiciary's exclusive sentencing authority and erodes the separation of powers." JER-90 (noting that "the Court recognizes that

---

[7] *See, e.g.*, *Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) (district court did not abuse its discretion in refusing to dismiss the defendant's indictment where "[t]here is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended. The cases cited by the Government involve a prosecutor's motion made before or during the pendency of a direct appeal"); *Thorpe*, 148 F.4th at 772 (D.C. Cir. 2025) (describing "a Rule 48(a) motion in these circumstances" post-sentencing as a "highly unusual request").

48

separation of powers concerns 'generally require a district court to defer to the government's decision to seek a dismissal of a criminal charge.' But those concerns peak 'when criminal charges are pending,' . . . once sentencing is complete, as is the case here, the justification for deferring to prosecutorial discretion wanes. At that point, the Government has already exercised its discretion to bring charges, try the case, and advocate for a sentencing position. In other words, by the [time the] Court imposes a sentence, there is simply not much prosecutorial discretion left to exercise."). The lower court's order reflects careful consideration and application of its limited discretion in the extraordinary circumstance presented here, where it properly found that the Government gave a pretextual reason for seeking to dismiss the indictment and instead sought only to prevent the court's sentence from being carried out. JER-91 (quoting *United States v. Olvero-Hernandez*, No. 11-cr-2798, 2012 WL 1068979, at *2 (S.D. Cal. Mar. 29, 2012) for the proposition that "[a]lthough the Government does have the power and discretion to prosecute, dismissing proceedings after adverse rulings by the Court seriously undermines the authority of the Court and is definitely against the interests of the public.").

Far from undermining the separation of powers, the district court's order upholds it and properly resists the Government's attempted overreach into the Judiciary's authority to impose and enforce sentences. And, as the district court

49

noted, to the extent the Government remains dissatisfied with the custodial sentence, the district court's order has not stripped it of options. The Executive Branch retains the pardon power and has every right to apply it here. JER-93.

### C. The Case Is Not Moot.

The Government contends that because the Rule 48(a) motion was uncontested, there was no "actual controversy" and so the district court should have dismissed the case as moot. This argument, if accepted, would remove from the court *any* authority to review an uncontested Rule 48(a) motion. This may be the authority the Government wants, but it is not the way the Rule is written or was intended. The Government's mootness argument is based on its assertion that it has unfettered discretion to dismiss a case with the defendant's consent. If this premise is false—and the text of Rule 48(a) makes it false—then the Government's motion in and of itself is not enough to make the case moot. There inherently remains a live controversy as to whether the district court properly used its discretion under Rule 48(a).

The logic of the Government's position is that Rule 48(a) is unconstitutional in limiting prosecutorial discretion to dismiss a case, even after it obtained a conviction and the defendant had been sentenced, and even where the district court finds that dismissal would be against the public interest. But no court has ever hinted at such a radical conclusion precisely because giving the Executive Branch

50

that authority would undermine essential powers of the federal Judiciary.

The Government's mootness argument ignores the plain language of the Rule, which the government's reading would make entirely superfluous, and extensive case law and historical material reiterating the Judiciary's critical role in deciding whether to dismiss an indictment, as set forth above. That role was carefully and deliberately written into Rule 48(a) to give the courts a reviewing function in instances in which the Government seeks to dismiss an indictment.

The Government does not cite a single case endorsing its position and merely analogizes to stipulations to dismiss in the civil context and an unusual Eighth Circuit case in which the Government filed an unopposed Rule 48(a) motion to dismiss an information *before trial* on the ground that "the evidence needed for conviction had been lost or misplaced and the memories of key witnesses had faded." That court explained that because "the government cannot mount a successful prosecution and does not wish to prosecute" and the "defendant does not wish to be prosecuted[,]" the case was moot. *United States v. Dupris*, 664 F.2d 169, 175 (8th Cir. 1981). In *Dupris*, the court accepted the Government's rationale for dismissal. This is obviously not the case here, where the court found the Government's stated reason was pretextual. *Dupris*'s general language is inapplicable when applied to this case's procedural posture, given that conviction and sentencing had already occurred and there is no continuing prosecution to

51

"mount." The United States could and did mount a successful prosecution, over which the trial court presided. The Government disliked the sentence the district court imposed and sought to undo it by dismissing the indictment. *Dupris* did not invalidate Rule 48(a)'s requirement—that "leave of court" is required to dismiss an indictment—that the court serve as a check on the Government's dismissal power.

The Government's argument, that any time it moves to dismiss and defendant consents, a case automatically becomes moot, cannot be reconciled with the text of Rule 48(a), its history, the separation of powers doctrine, or decisions of this and other courts.

## VIII. CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.

Respectfully submitted,

DATED: June 22, 2026

*s/Erwin Chemerinsky*

Erwin Chemerinsky
*echemerinsky@law.berkeley.edu*
University of California, Berkeley
School of Law
Law Building 215
Berkeley, California 94720-7200
(510) 642-6483

## STATEMENT OF RELATED CASES

Amicus Curiae is not aware of any related cases pending before the Court.

DATED:  June 22, 2026                    KENDALL BRILL & KELLY LLP

By:        *s/Jeff Chemerinsky*
_____

Jeff Chemerinsky
Attorneys for Amicus Curiae Erwin
Chemerinsky

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** Nos. 25-3607, 25-5125, 25-5200

I am the attorney or self-represented party.

**This brief contains <u>12,555</u> words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/Jeff Chemerinsky</u>    **Date** <u>June 22, 2026</u>

604503865